## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____ )
**COMMONWEALTH OF** )
**MASSACHUSETTS,** )
 )
**Plaintiff,** )
 )
**v.** )   **Civil Action No.   13-cv-11301-RGS**
 )
**PENNY PRITZKER, et al.** )
 )
 )
**Defendants.** )
 )
**STATE OF NEW HAMPSHIRE,** )
**by its** )
**ATTORNEY GENERAL** )
**JOSEPH A. FOSTER,** )
 )
**Intervenor,** )
_____ )

## MEMORANDUM OF LAW SUPPORTING
## THE MOTION OF THE STATE OF NEW HAMPSHIRE
## FOR INTERVENTION AS OF RIGHT, OR IN THE ALTERNATIVE,
## FOR PERMISSIVE INTERVENTION

The State of New Hampshire respectfully submits this Memorandum of Law in

support of its Motion to Intervene as of Right under Fed. R. Civ. P. 24(a)(2).

## I.   FACTUAL AND PROCEDURAL SETTING

On May 30, 2013, the Plaintiff Commonwealth of Massachusetts filed a lawsuit

against the Secretary of Commerce and other U.S. officials, challenging Frameworks 48 and

50 issued by the Secretary under the Magnuson-Stevens Fishery Conservation and

Management Act (Magnuson-Stevens), 16 U.S.C. § 1855(f) and 1861(d).  Massachusetts

claims that the Frameworks will have a devastating impact on the groundfishing industry in New England.  Because New Hampshire's groundfishing industry would be similarly impacted by Frameworks 48 and 50, and Massachusetts does not adequately represent New Hampshire's interests, New Hampshire seeks to intervene.

The State of New Hampshire is home to a substantial groundfish industry.  The State has in place a regulatory fishery conservation and management system, and is home to citizens who actively participate in fishery issues.  New Hampshire stands in *parens patriae* to protect the broad interests of its citizens and their economic and political activities.

New Hampshire seeks to intervene in this action with Massachusetts so that it may participate meaningfully and constructively in the action.  A judgment or a remedial order in this case could have a significant impact on the State's economy and on its conservation programs.   Moreover, New Hampshire has historically participated in the New England Fishery Management Council and currently has representatives on the Council.   New Hampshire also has an active role in establishing and enforcing wildlife conservation measures, including the protection of marine life.  Finally, among the State's affected interests are those of recreational and conservation groups that may not be adequately represented by the Plaintiff in the suit.

On March 3, 1614 Captain John Smith sailed from England bound for New England in search of fortune hoping for whales, gold and copper, but acknowledging that "if those failed, Fish and Furres was then our refuge."[1]  Fish has been the true wealth of New England,

---

[1] See Report of Tom C. Clark, Special Master, Supreme Court of the United States, *New Hampshire v. Maine*, No. 64, Orig., (Oct. 8, 1975) at 8 (quoting J. Smith, A Description of New England (Veazie reprint of the edition of 1616) at 19).

and New Hampshire has for hundreds of years supported a vibrant and important fishing industry and way of life.

New Hampshire is home to many involved in the fishing business.  In the year 2012, New Hampshire fishermen landed 7.5 million pounds of finfish having a value of $5.6 million.  Of this catch, 3.2 million pounds, worth $3.9 million, was groundfish that would be affected by any remedy in this case.  In addition, in 2010, New Hampshire was home to 9 fish processing plants that employed 269 people.  Finally, in 2012, New Hampshire issued 326 saltwater commercial fishing licenses, 178 of whom indicated intent to target groundfish while only 41 vessels landed groundfish in that year.

Pursuant to New Hampshire state law the Department of Fish and Game plays an important role in fisheries conservation and management.  See, e.g., N.H. Rev. Stat. Ann. 211:49; 211:60; 211:61-b & 211:62.  The Fish and Game department employs a number of conservation officers focused on enforcing fisheries laws.  In addition, New Hampshire utilizes an extensive staff of marine biologists, fishery experts and scientists to create, implement and measure the success of fisheries management and conservation programs.

New Hampshire also has an active citizenry with committed interests in environmental conservation.

New Hampshire's interests, while similar in some respects to those of the Plaintiff, are in other important respects very different.  New Hampshire groundfish fisheries, for example, employ smaller vessels that tend to fish closer to shore.  New Hampshire is concerned that the measures provided in the new Frameworks will have a disproportionate impact on New Hampshire's fisheries and the communities that they sustain.  The State seeks

therefore to ensure that the unique voice of its citizens be heard on addressing this important problem.

## II.   ARGUMENT

### A.   STANDARDS FOR INTERVENTION OF RIGHT

Fed. R. Civ. P. 24(a)(2) defines when a party may intervene "as of right."  It states:

> Upon timely application, anyone shall be permitted to intervene in an action . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

The First Circuit applies the following four-prong test for intervention by right under Fed. R. Civ. P. 24(a)(2): "a would-be intervenor must demonstrate that: (i) its motion is timely; (ii) it has an interest relating to the property or transaction that forms the foundation of the ongoing action; (iii) the disposition of the action threatens to impair or impede its ability to protect this interest; and (iv) no existing party adequately represents its interest." *Ungar v. Arafat*, 634 F.3d 46, 50 (1st Cir. 2011); *Maine v. Director, U.S. Fish & Wildlife Serv.*, 262 F.3d 13, 17-18 (1st Cir. 2001).

### B.   NEW HAMPSHIRE'S APPLICATION MEETS THE STANDARDS FOR INTERVENTION OF RIGHT

#### 1.   New Hampshire's Application is Timely

The timeliness of an application for intervention "generally requires the consideration of the following four factors:

> (i) the length of time the prospective intervenors knew or reasonably should have known of their interest before they petitioned to intervene; (ii) the prejudice to existing parties due to the intervenor's failure to petition for intervention promptly; (iii) the prejudice the prospective intervenors would

4

suffer if not allowed to intervene; and (iv) the existence of unusual
circumstances militating for or against intervention.

*Tutein v. Daley*, 43 F. Supp. 2d 113, 126-27 (D. Mass. 1999).  In *Tutein*, this Court found

that where a private party sought to intervene in a challenge to a fishery regulation, its

application was timely when filed within three months.  New Hampshire seeks to intervene

within 4 months.  At this point in the proceeding very little has occurred.  The parties have

agreed to proceed on summary judgment using the administrative record.  New Hampshire

has reviewed the Parties' Joint Statement Regarding Litigation Schedule (doc. 12) and, if

allowed to intervene, would agree to be bound by that agreement as well as any orders

already entered.  Therefore, neither of the existing parties will be prejudiced by New

Hampshire's entrance at this juncture.  The prejudice to New Hampshire, were it not allowed

to intervene would be significant.  A State with significant interests in the outcome of the

case would be denied the right to participate and protect those interests, and the interests for

those it stands in *parens patriae*.  The only unusual circumstance here is that the intervenor is

a sovereign State with unique interests.

### 2.    The State of New Hampshire Has and Represents Important Interests Meriting Intervention of Right

The conservation of marine resources, including groundfish, is an important matter

for the State of New Hampshire.  *Sierra Club v. City of San Antonio*, 115 F.3d 311, 315 (5th

Cir. 1997) (Texas has important interest in the protection of its fish and wildlife resources to

warrant intervention as of right); *Sierra Club v. Robertson*, 960 F.2d 83, 86 (8th Cir. 1992)

(Arkansas allowed to intervene to protect its interest in the fish and wildlife, which it holds in

public trust); *see also Hughes v. Oklahoma*, 441 U.S. 322, 337 (1979).

New Hampshire also has an interest in intervening because of the potential harm to its fishery from the implementation of the Frameworks.  Many New Hampshire residents both directly and indirectly depend on the groundfish industry for employment and benefits.  New Hampshire's interest in preserving an important and historic part of its economy is a protectable interest warranting intervention.  *See Coalition of Az./N.M. Counties for Stable Economic Growth v. Department of Interior*, 100 F.3d 837 (10th Cir. 1996) (photographer who made money from images of Mexican Spotted Owl has a "direct, substantial and legally protectable interest" for purpose of intervention as of right in action to protect the owls); *see also Pennsylvania v. West Virginia*, 262 U.S. 553, 591-92 (1923) (interest in protecting economic interests of State citizens are "substantial"); *Sierra Club v. City of San Antonio*, 115 F.3d at 315 (Texas has important interest in maintaining agriculture interests and in the economic health and well-being of its citizens to warrant intervention as of right); *Sierra Club v. Glickman*, 82 F.3d 106, 110 (5th Cir. 1996) (state has interest in maintaining the agricultural industry in the state); *Sierra Club v. Robertson*, 960 F.2d 83, 86 (8th Cir. 1992) (Arkansas has interest in sustaining the vitality of both the forest products and tourism industries and in protecting its tax revenues so as to justify intervention as of right).

The State's interests go beyond merely seeking to protect a fragile economic segment from destruction, however, and reach to representation of the State's regulatory role in natural resource conservation.  Rulings in this case could have a substantial impact on the conservation and enforcement programs that New Hampshire provides and supports.  New Hampshire actively wishes to continue with its programs to conserve and manage the natural resources within its control.  Consequently, its voice should be heard in this forum.

### 3.    Rulings in this Case Could Impair New Hampshire's Ability to Protect Its Interests

Whether an intervenor's ability to protect its interest may be impaired or impeded is a practical matter, and the impairment or impediment required to be shown does not need not be of a strictly legal nature.  *See Coalition of Az./N.M. Counties*, 100 F.3d at 844.  The Plaintiff in this case seeks an order enjoining the Defendants from implementing the Frameworks.  If it is successful, the Court will then be required to fashion a remedy of some kind.  The injunction and remedy could be imposed without input from New Hampshire and could have dramatic adverse results to the State and its people.  If New Hampshire is not permitted to participate in the adoption of new parts of a fisheries management plan (or modifications of old parts of such), as it traditionally and historically has been able to do, then, as a practical matter, its ability to protect rights will be impaired.  *See Forest Conservation Council v. United States Forest Service*, 66 F.3d 1489, 1498 (9th Cir. 1995) (impairment of State's ability to protect forest management interests by relief sought by plaintiffs justified intervention).  New Hampshire has historically played a key role in the formulation of fisheries management plans and has been a party in other cases like the present one.  *See, e.g., Commonwealth v. Gutierrez*, 594 F. Supp. 2d 127 (D. Mass. 2009); *Conservation Law Found. v. Evans*, 195 F. Supp. 2d 186 (D.D.C. 2002).  It has a right to intervene now because rulings issued without its input would impair and impede that important role.

### 4.    New Hampshire's Interests Will Not Be Adequately Represented By The Plaintiff.

The burden of establishing that a proposed intervenor's interests will not be adequately represented by existing parties is necessarily a light one.  *See Trbovich v. United*

*Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972); *Maine v. Director*, 262 F.3d at 18.

It suffices for an applicant to show that the present representation might be inadequate.

*Trbovich,* 404 U.S. at 538 n.10; *Maine v. Director*, 262 F.3d at 18. The present

representation in this case might not adequately represent New Hampshire's interests simply

because it has different interests to represent than those of this State.

In environmental actions filed against federal agencies, courts generally allow

affected states to intervene in recognition of the fact that a state's interests do not necessarily

coincide with those of the federal government.  *See, e.g., Glickman*, 82 F.3d at 110 (allowing

Texas to intervene because State has a narrower but independently vital interest in

representing its residents, maintaining its agricultural industry, and allocating its natural

resources.);  *Forest Conservation Council v. United States Forest Service*, 66 F.3d 1489,

1499 (9th Cir. 1995) (holding that Arizona could intervene as of right, because Forest Service

did not represent more closely defined interests of the state).  Similarly, the interests

represented by one State intervenor do not adequately represent the interests of another state.

Massachusetts and New Hampshire may not agree on which theories to advance in this case

or how to argue them; they might disagree on a remedy.  What would be good for

Massachusetts would not necessarily be good for New Hampshire.  Fisheries have long been

the *champs du mars* of intense competitive activities between states.  *See, e.g., New*

*Hampshire v. Maine*, 426 U.S. 363 (1976) (adjudicating boundary dispute that arose over

disputed lobster fishing grounds).  But fundamentally, New Hampshire and Massachusetts

have different fishing industries which might be affected differently by the range of

outcomes in this case – New Hampshire's primarily consists of smaller vessels fishing close

to shore.  New Hampshire should be allowed to intervene here to represent the interests that are unique to the State and not shared by any of the other parties or intervenors.

**C.      IF NEW HAMPSHIRE IS NOT ENTITLED TO INTERVENE AS A MATTER OF RIGHT, IT SHOULD BE GRANTED PERMISSIVE INTERVENTION.**

When a party may not intervene as of right, the court may still permit intervention. Fed.R.Civ.P 24(b).  It seems clear that New Hampshire can meet the timeliness, interest, impairment and adequate representation tests.  But in any case, New Hampshire should be permitted to intervene because "it will contribute a perspective which may not otherwise be represented in this matter." *Humane Soc. of United States v. Clark*, 109 F.R.D. 518, 521 (D.D.C. 1985).  And that perspective comes from a small State with a smallboat fishery, but a big history of fisheries activity, industry and conservation.

<u>Conclusion</u>

For the reasons stated above, New Hampshire should be allowed to intervene as of right in this matter  In the alternative, the Court, in its discretion, should permit New Hampshire to intervene.

Dated:  September 10, 2013                         Respectfully submitted,

**STATE OF NEW HAMPSHIRE**

**JOSEPH A. FOSTER**

Attorney General

<u>/s/ Peter C.L. Roth</u>
Peter C.L. Roth (bbo # 556917)
Senior Assistant Attorney General
33 Capitol Street
Concord, New Hampshire 03301
(603) 271-3679

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2013, I served the above memorandum by ECF

upon the parties receiving service through the Court's ECF system


Dated: September 10, 2013                              /s/ Peter C.L. Roth
                                                       Peter C.L. Roth